## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **AL B. HILL, as Receiver for Credit Nation Capital, LLC, Credit Nation Acceptance, LLC, Credit Nation Auto Sales, LLC, American Motor Credit, LLC, and Spaghetti Junction, LLC,** | | |
| **Plaintiffs,** | | |
| **v.** | | **1:16-cv-4767-WSD** |
| **ANTONIO DUSCIO, WILLIAM CLOW, NEAL JONES, BEVERLY LEVERTON, LYNN LEVERTON, TERRY LUCK, WALTER PADON, and JOYCE WISDOM,** | | |
| **Defendants.** | | |

## OPINION AND ORDER

This matter is before the Court on Defendant Antonio Duscio's ("Duscio")

Motion to Dismiss Receiver's Complaint for Damages & Injunctive Relief [34]

("Motion to Dismiss").[1]  Also before the Court is Plaintiff's Motion for Final

Default Judgment Against Defendants Neal Jones ("Jones"), Terry Luck ("Luck"),

---

[1]     The Complaint was filed by Plaintiff Al B. Hill ("Plaintiff"), as Receiver for
Credit Nation Capital, LLC ("CN Capital"), Credit Nation Acceptance, LLC,
Credit Nation Auto Sales, LLC, American Motor Credit, LLC, and Spaghetti
Junction, LLC (collectively, the "Receivership Companies").

and Walter Padon ("Padon") [39.3] ("Motion for Default Judgment").

## I.     BACKGROUND

### A.     Facts

Between 2009 and 2015, CN Capital raised money by selling unregistered three-year and five-year promissory notes to investors. ([1] ¶ 17). CN Capital allegedly promised investors a 9% to 11% fixed rate of return and claimed the promissory notes were "100% asset backed." (Id.). CN Capital represented that it used the money it raised, in part, to purchase life insurance policies, which supposedly resulted in a profit whenever an insured's death benefit on the policy was greater than the total of the purchase price and premiums paid. (Id. ¶ 18). CN Capital also represented that the insurance policies involved life expectancies of three to four years and that it expected to receive a fifteen percent annual return on its portfolio of life insurance settlements. (Id. ¶ 19). CN Capital sold fractional interests in the policies to investors through its affiliate, Credit Nation Acceptance, LLC. (Id. ¶ 20).

According to Plaintiff, CN Capital, however, was never profitable— "[i]nstead, it was insolvent from [its] inception." (Id. ¶ 21). CN Capital made a number of false representations to its investors, and failed to inform its investors that that the promissory notes they purchased were in fact unsecured and unsafe

investments, that the insurance policies involved life expectancies far longer than three to four years, that CN Capital was losing millions of dollars each year, and that the securities they were investing in should have been, but were not, registered with the SEC.  (Id. ¶¶ 24-25, 27-28).  Plaintiff states that "[f]rom its inception, CN Capital was a Ponzi scheme," in which "[i]nvestors could only receive 'returns' on their investments so long as new investment money could be brought in to pay interest payments to prior noteholders and pay insurance premiums." (Id. ¶ 29).  Plaintiff states that the "vast majority of investors"—most of which were "elderly people on fixed incomes who have been defrauded out of their life savings"—have lost millions of dollars.  (Id. ¶ 32).  Defendants—also investors— allegedly invested their money in the promissory notes and life insurance policies, but, unlike the others, received back the full amounts of their investments plus additional payments denominated as interest.  (Id. ¶ 33).  Defendants thus allegedly profited by receiving money paid in by other investors.  (Id.).

B.     Procedural History

On November 10, 2015, the United States Securities and Exchange Commission ("SEC") filed a complaint seeking injunctive relief and damages against James A. Torchia ("Torchia") and the Receivership Companies.  The case is currently pending in the Northern District of Georgia as Civil Action No.

1:15-cv-3904-WSD. The SEC alleges that Torchia directed, and the Receivership Companies participated in, fraudulent investment schemes such as the ones described above relating to CN Capital. On April 25, 2016, the Court entered an order granting a preliminary injunction freezing the assets of Torchia and the Receivership Companies and appointing the Receiver. (No. 1:15-cv-3904-WSD [66]).

On December 28, 2016, Plaintiff filed his Complaint [1] in this action on behalf of the Receivership alleging that certain interest paid to Defendants on the investments they purchased from CN Capital constituted fraudulent transfers, unjust enrichment, and money had and received. Plaintiff is seeking to recover those interest payments and, with respect to Defendant Duscio only, a viatical insurance policy that, at the time the Complaint was filed, had not yet matured. (Id. at 19-20). Plaintiff contends that, "[i]n total, Duscio transferred $1.7 million to Synergy Motor Company and Credit Nation Auto Sales, and Torchia caused CN Capital to pay Duscio $2,051,365.62, which is $351,365.62 more than Duscio's investment." (Id. ¶ 43). Plaintiff alleges Jones "invested $50,000 and received back $64,250, which is $14,250 more than he invested." (Id. ¶ 53). Plaintiff further alleges "Luck invested $75,639.32 and received back $99,110.34, which is $23,471.02 more than he invested." (Id. ¶ 66). Finally, Plaintiff contends

that "in total, Padon invested $70,000 and received back $89,950, which is $19,950 more than he invested." (Id. ¶ 70).

On March 29, 2017, the Court granted Plaintiff Al B. Hill's and Defendant Joyce Wisdom's Joint Motion to Dismiss Claims Against Defendant Wisdom [30] and dismissed Plaintiff's claims against Wisdom with prejudice. ([31]). On April 14, 2017, the Court granted Defendants Beverly Leverton's and Lynn Leverton's and Plaintiff Al B. Hill's Joint Motion to Dismiss Claims Against the Leverton Defendants [33] and dismissed the claims against the Leverton's with prejudice. ([37]).

On April 12, 2017, Duscio filed his Motion to Dismiss.[2] Duscio asserts that (1) Plaintiff fails to state a claim upon which relief may be granted pursuant to

---

[2]    In his Motion to Dismiss, Duscio asserts factual allegations outside of the Complaint and attaches three exhibits to his Motion to Dismiss. "A court is generally limited to reviewing what is within the four corners of the complaint on a motion to dismiss." See, e.g., Bickley v. Caremark RX, Inc., 461 F.3d 1325, 1329 n.7 (11th Cir. 2006). Where a party presents material outside a complaint as part of a motion to dismiss, the court must either disregard matters outside the pleadings or convert the motion to dismiss into a motion for summary judgment. See Jones v. Auto. Ins. Co. of Hartford, 917 F.2d 1528, 1532 (11th Cir. 1990) (citation omitted); see also Murray-Shanks v. Rabun Gap-Nacoochee Sch., Inc., No. 2:13-CV-00211-WCO, 2014 WL 12516253, at *2 (N.D. Ga. Feb. 4, 2014). Given the limited factual record here, the Court disregards the attached exhibits and "facts" in Duscio's Motion to Dismiss that were not alleged in the Complaint rather than convert Defendant's motion to dismiss into a motion for summary judgment.

Fed. R. Civ. P. 12(b)(6); (2) the claims of fraud are not stated with particularity as required by Fed. R. Civ. P. 9(b); (3) the Court lacks subject matter jurisdiction; and (4) Plaintiff lacks standing . Duscio specifically contends that the Complaint fails to specify the fraudulent transfers statute under which Plaintiff seeks to hold Duscio liable and otherwise fails to sufficiently plead the required elements to allege that Duscio transfers that were fraudulent. ([34] at 5). Duscio also argues that Plaintiff has failed to plead unjust enrichment because an express contract exists between CN Capital and Duscio for the investments, and "Georgia courts have consistently rejected claims for unjust enrichment where, as here, there is an enforceable contract that governs the rights and obligations of the parties." (Id. at 14). Duscio employs the same reasoning to support why he argues that Plaintiff has failed to state a claim for money had and received. He asserts: "Like the unjust enrichment claim, the money had and received claim should be dismissed based on the existence of Duscio's contracts with Receivership [Companies] as the theory of money had and received 'applies only when there is no actual legal contract.'" (Id. at 15). On April 26, 2017, Plaintiff filed his Brief in Opposition to Defendant Duscio's Motion to Dismiss [38] ("Response").

On August 10, 2017, Plaintiff filed his Motion for Default Judgment against Jones, Luck, and Padon. Plaintiff contends that "[d]espite due and proper service,

6

[Jones, Luck, and Padon] have failed to plead, defend, or otherwise respond to the Summons and Complaint served on them within the time prescribed by the Federal Rules of Civil Procedure, i.e., Neal Jones, by January 31, 2017; Terry Luck, by February 1, 2017; and Walter Padon, by January 30, 2017." ([39.3] at 2). Plaintiff further alleges that, "[b]y failing to plead or otherwise respond, the [d]efaulting Defendants have admitted each paragraph of Plaintiff's Complaint, specifically including those paragraphs and statements concerning the fraudulent transfers directed to the [d]efaulting Defendants in furtherance of the Ponzi scheme while CN[Capital] was insolvent, and also including their liability for unjust enrichment and money had and received. Additionally, the Defaulting Defendants admit those paragraphs setting forth the amounts claimed by Plaintiff, including interest." ([39.3] at 4) (citations omitted).

## II.     LEGAL STANDARDS

### A.     Motion to Dismiss

On a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must "assume that the factual allegations in the complaint are true and give the plaintiff[] the benefit of reasonable factual inferences." Wooten v. Quicken Loans, Inc., 626 F.3d 1187, 1196 (11th Cir. 2010). Although reasonable inferences are made in the plaintiff's favor,

7

"'unwarranted deductions of fact' are not admitted as true." Aldana v. Del Monte Fresh Produce, N.A., 416 F.3d 1242, 1248 (11th Cir. 2005) (quoting S. Fla. Water Mgmt. Dist. v. Montalvo, 84 F.3d 402, 408 n.10 (11th Cir. 1996)). Similarly, the Court is not required to accept conclusory allegations and legal conclusions as true. See Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1290 (11th Cir. 2010) (construing Ashcroft v. Iqbal, 556 U.S. 662 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). Mere "labels and conclusions" are insufficient. Twombly, 550 U.S. at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). This requires more than the "mere possibility of misconduct." Am. Dental, 605 F.3d at 1290 (quoting Iqbal, 556 U.S. at 679). The well-pled allegations must "nudge[] their claims across the line from conceivable to plausible." Id. at 1289 (quoting Twombly, 550 U.S. at 570).

B.    Motion for Default Judgment

Rule 55(b) of the Federal Rules of Civil Procedure provides that default

judgment may be entered against defaulting defendants as follows:

> (1)    ***By the Clerk***.  If the plaintiff's claim is for a sum certain or a
> sum that can be made certain  by computation, the clerk—on
> the plaintiff's request, with an affidavit showing the amount
> due—must enter judgment for that amount and costs against a
> defendant who has been defaulted for not appearing and who is
> neither a minor nor an incompetent person.
>
> (2)    ***By the Court***.  In all other cases, the party must apply to the
> court for a default judgment. . . .  If the party against whom a
> default judgment is sought has appeared personally or by a
> representative, that party or its representative must be served
> with written notice of the application at least 7 days before the
> hearing.  The court may conduct hearings or make referrals . . .
> when, to enter or effectuate judgment, it needs to:
> (A)    conduct an accounting;
> (B)    determine the amount of damages;
> (C)    establish the truth of any allegation by evidence; or
> (D)    investigate any other matter.

Fed. R. Civ. P. 55(b).

"[T]here is a strong policy of determining cases on their merits . . . . [Courts]

therefore view defaults with disfavor."  In re Worldwide Web Sys., Inc., 328 F.3d

1291, 1295 (11th Cir. 2003).  "The entry of a default judgment is committed to the

discretion of the district court."  Hamm v. DeKalb Cnty., 774 F.2d 1567, 1576

(11th Cir. 1985), cert. denied, 475 U.S. 1096 (1986) (citing 10A Charles Alan

Wright, et al., Federal Practice & Procedure § 2685 (1983)).

9

When considering a motion for default judgment, a court must investigate the legal sufficiency of the allegations and ensure that the complaint states a plausible claim for relief. Cotton v. Mass. Mut. Life Ins. Co., 402 F.3d 1267, 1278 (11th Cir. 2005); Bruce v. Wal-Mart Stores, Inc., 699 F. Supp. 905, 906 (N.D. Ga. 1988). If "the plaintiff has alleged sufficient facts to state a plausible claim for relief," a motion for default judgment is warranted. Surtain v. Hamlin Terrace Found., 789 F.3d 1239, 1246 (11th Cir. 2015). "Conceptually, then, a motion for default judgment is like a reverse motion to dismiss for failure to state a claim." Id. at 1245. "[W]hile a defaulted defendant is deemed to 'admit[] the plaintiff's well-pleaded allegations of fact,' he 'is not held to admit facts that are not well-pleaded or to admit conclusions of law.'" Cotton, 402 F.3d at 1278 (quoting Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)).

## III. DISCUSSION

### A. Duscio's Motion to Dismiss

#### 1. Fraudulent Transfers

Duscio first argues that Plaintiff fails to specify which statute under which he is proceeding in asserting his fraudulent transfer claim, and therefore, Plaintiff's fraudulent transfer claim fails. ([34] at 5). The Complaint states, in relevant part:

10

> Under the Georgia Uniform Fraudulent Transfer Act, the Georgia
> Uniform Voidable Transactions Act, and the fraudulent transfer laws
> of the states of residence of the defendants, the defendants are liable
> to CN Capital for the fraudulent transfers of funds that they received
> in excess of their principal investments.

([1] ¶ 83).  This is the only instance in the Complaint in which Plaintiff discusses

the statutory basis for his fraudulent transfer claim against Defendants.  The Court

finds that, while this statement lacks a certain degree of specificity, it is sufficient

to allege that Plaintiff is asserting, at the very least, a claim against Duscio under

the Georgia Uniform Fraudulent Transfer Act ("GUFTA") and the Georgia

Uniform Voidable Transactions Act ("GUVTA"). [3]

> GUVTA provides:
>
> (a) A transfer made or obligation incurred by a debtor is voidable as to
> a creditor, whether the creditor's claim arose before or after the
> transfer was made or the obligation was incurred, if the debtor made
> the transfer or incurred the obligation:
>
> > (1) With actual intent to hinder, delay, or defraud any creditor
> > of the debtor; or
> >
> > (2) Without receiving a reasonably equivalent value in
> > exchange for the transfer or obligation, and the debtor:

---

[3]     Georgia replaced the Georgia Uniform Fraudulent Transfers Act with the
Georgia Uniform Voidable Transactions Act, § 18-2-70 et seq., effective July 1,
2015.  The new statute is identical to the prior statute except that the word
"fraudulent "was changed to "voidable."

(A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(B) Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

O.C.G.A. § 18-2-74(a). Under GUVTA, a "creditor" is a "person who has a claim, regardless of when the person acquired the claim, together with any successors or assigns." O.C.G.A. § 18-2-71(4). A "debtor" is "a person who is liable on a claim." O.C.G.A. § 18-2-71(6). A "claim" is "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." O.C.G.A. § 18-2-71(3).

"When determining a debtor's intent, consideration is given to, among other things, the factors set forth in O.C.G.A. § 18-2-74(b), which are commonly referred to as the 'badges of fraud.'" RES-GA YPL, LLC v. Rowland, 340 Ga. App. 713, 717-718 (2017). The Eleventh Circuit has held, however, under Florida's nearly-identical fraudulent transfers statute, that "proof that a transfer was made in furtherance of a Ponzi scheme establishes actual intent to defraud . . . without the need to consider the badges of fraud." Wiand v. Lee, 753 F.3d

1194, 1197 (11th Cir. 2014); see also Wiand v. Dancing $, LLC, 578 F. App'x 938 (11th Cir. 2014).

The Complaint alleges that CN Capital operated from 2009 to 2015, that it was a Ponzi scheme that was insolvent from its inception, and that it was controlled by James Torchia, who caused CN Capital to transfer a $1.2 million life insurance policy and $351,365.62 to Duscio in excess of Duscio's invested capital. ([1] ¶¶ 17, 21-29, 30, 34-44).  The Complaint further alleges that Duscio entered into a debtor-creditor relationship when he transacted business with CN Capital, that the money Duscio received came from other investors through the fraudulent sale of unregistered securities, and that Duscio received these payments while CN Capital was insolvent due to the control exerted by Torchia.  (Id. ¶¶ 15, 75-77). Plaintiff states that, as Receiver, he has a claim on behalf of CN Capital against Torchia for his fraudulent transfer of assets to Duscio, and that he is entitled to claw those assets back.  ([38] at 5).

Plaintiff alleges that a creditor-debtor relationship exists, that Duscio's profits were the result of a Ponzi scheme, and that CN Capital possesses a claim against Duscio for an insurance policy and money paid in excess of Duscio's initial investment.  The Court finds that, "assum[ing] that the factual allegations in the complaint are true and giv[ing] the plaintiff[] the benefit of reasonable factual

inferences," Plaintiff has asserted facts sufficient to plead a claim against Duscio for fraudulent transfer.[4] <u>Wooten</u>, 626 F.3d at 1196.

## 2. Unjust Enrichment

The Complaint next alleges a claim for unjust enrichment and constructive trust. ([1] ¶¶ 85-90). Duscio contends that (1) Plaintiff fails to plead that he does not have a remedy provided by law and (2) an express contract between CN Capital and Duscio exists,[5] and, therefore, a claim for unjust enrichment is not proper. ([34] at 13-15).

---

[4] Duscio also argues that any of the alleged fraudulent transfers made four years prior to the filing of the Complaint are barred by the applicable statute of limitations. ([34] at 11-13); <u>see also</u> O.C.G.A. § 18-2-79 ("A cause of action with respect to a fraudulent transfer . . . is extinguished unless [the] action is brought . . . within four years after the transfer was made . . . or, if later, within one year after the transfer . . . was or could reasonably have been discovered by the claimant[.]"). Plaintiff contends that he could not, as the claimant, have discovered the transfer until after his appointment on April 25, 2016. Considering that "questions concerning a plaintiff's diligence in discovering an alleged fraud are generally questions for a trier of fact" and that the record does not establish, as a matter of law, that the alleged fraudulent transfers dating back to 2008 are time barred, the Court does not grant Duscio's motion to dismiss on this ground. <u>RES-GA YPL</u>, 340 Ga. App. at 721.

[5] The Complaint states that no promissory note was issued in connection with either of Duscio's investments. ([1] ¶¶ 34-35). The Court declines at this stage of the litigation to consider the unauthenticated, disputed exhibit attached to Duscio's Motion to Dismiss that Duscio claims confirms the terms of a contract between him and CN Capital.

In the absence of an enforceable contract, a plaintiff may recover, under a claim for unjust enrichment, a benefit conferred on the defendant for which the plaintiff did not receive a corresponding return.  Ga. Tile Distribs., Inc. v. Zumpano Enters., Inc., 422 S.E.2d 906, 908 (Ga. Ct. App. 1992).  To state a claim for unjust enrichment a plaintiff must "show that (1) a benefit was provided, (2) compensation for that benefit was not received, and (3) the failure to compensate renders the transaction unjust."  Ralls Corp. v. Huerfano River Wind, LLC, 27 F. Supp. 3d 1303, 1329 (N.D. Ga. 2014); Foundation for Lost Boys v. Alcon Entertainment, LLC, 2016 WL 4394486, at *10 (N.D. Ga. March 22, 2016).

The Complaint alleges that the "payments made to [] [D]efendants in excess of their principal investments are proceeds that were unlawfully obtained from investors by means of artifice and fraud."  ([1] ¶ 86).  The Complaint further alleges that Defendants "accepted, retained, and wrongfully benefited from the transfers from CN Capital," and "[i]t would be inequitable for [] [D]efendants to retain the funds they received from CN Capital."  (Id. ¶¶ 87-88).  The Complaint states that Duscio invested $700,000 in Synergy Motor Company in 2008 and $1,000,000 in Credit Nation Auto Sales in 2009.  (Id. ¶¶ 34-35).  The Complaint does not identify or allege any investment made by Duscio directly into CN Capital, nor does it allege that an investment contract existed between Duscio

and CN Capital. Instead, the Complaint alleges that Torchia caused CN Capital to make payments to Duscio that it did not owe him. (Id. ¶¶ 86-90). The Complaint alleges that the money Duscio received came from investments made by other victims of the fraud, and, in equity and good conscience, Duscio is not entitled to retain those funds. (Id. ¶¶75, 86-89). The Court finds that Plaintiff has asserted facts sufficient to plead a claim of unjust enrichment against Duscio, including that a benefit was provided to Duscio, compensation for that benefit was not received, and the failure to compensate renders the transaction unjust.

### 3. Money Had and Received

The Complaint next alleges a claim for money had and received. "To establish a claim for money had and received a plaintiff must show (1) that a party has received money justly belonging to the plaintiff; and (2) that the plaintiff has made a demand for repayment which was refused." Sec. & Exch. Comm'n v. Price, No. 1:12-cv-2296, 2015 WL 11198937, at *6 (N.D. Ga. Mar. 31, 2015) (citing City of Atlanta v. Hotels.com, 710 S.E.2d 766, 770 (Ga. 2011)). "An action for 'money had and received' is the functional equivalent of an action for unjust enrichment." Id. at *6 n.5; see McCaughey v. Bank of America, N.A., 279 F. App'x 794, 797 (11th Cir. 2008) ("[Money had and received] is merely one form of action to recover damages based on unjust enrichment.").

An action for money had and received is "founded on the equitable principle that no one ought to unjustly enrich himself at the expense of another, and is a substitute for a suit in equity." Gulf Life Ins. Co. v. Folsom, 349 S.E.2d 368, 370-71 (Ga. 1986. "Thus, recovery is authorized against one who holds the money of another which he ought in equity and good conscience to refund." Piedmont Eng'g & Const. Corp. v. Balcor Partners-84 II, Inc., 396 S.E.2d 279, 281 (Ga. Ct. App. 1990). "In an action for money had and received, the plaintiff generally can recover a payment mistakenly made when that mistake was caused by his lack of diligence or his negligence in ascertaining the true facts and the other party would not be prejudiced by refunding the payment—subject to a weighing of the equities between the parties by the trier of fact." Wyatt v. Hertz Claim Mgmt. Corp., 511 S.E.2d 630, 632 (Ga. Ct. App. 1999).

Plaintiff alleges that, in total, Torchia caused CN Capital to pay Duscio $2,051,365.62, which is $351,365.62 more than Duscio's investment. ([1] ¶ 43). Plaintiff further alleges that CN Capital has been insolvent since its inception, and it is the rightful owner of the funds transferred to Defendants. (Id. ¶¶ 93). In the Complaint, Plaintiff demands the return of the funds for the benefit of CN Capital. Plaintiff does not, however, allege that demand for return of the funds was made anytime before the filing of the Complaint or that Duscio in particular refused to

17

return payment. The Court finds that Plaintiff's failure to allege facts showing that he previously demanded and was refused payment from Duscio renders this claim insufficient. City of Atlanta v. Hotels.com, 289 Ga. 323, 328 (2011) (affirming lower court's decision to grant summary judgment on money had and received claim where the plaintiff conceded it did not make any demand for payment). Duscio's Motion to Dismiss is granted with respect to Plaintiff's claim for money had and received.

### 4.    Equitable Relief

The final claim Duscio seeks dismissed is a claim for equitable relief with respect to the $1.2 million insurance policy transferred from CN Capital to Duscio. Plaintiff asserts in the Complaint that Torchia caused CN Capital to transfer to Duscio, for no consideration, a policy issued by American General on the life of Cecil Lovell in the face amount of $1.2 million. ([1] ¶ 98). Plaintiff contends that, "[i]n equity and good conscience, Duscio is not entitled to retain the Lovell policy," and his "remedy at law is inadequate." (Id. ¶¶ 99-100). Duscio argues in his Motion to Dismiss that he is "entitled to retain the [insurance] policy as it was received through a valid bargain for exchange," and it is "not susceptible to be clawed back through a claim of fraudulent transfer, nor should it be permitted under equitable relief." ([34] at 16). Duscio claims that "the transfer of the [] life

18

insurance policy was consideration for Duscio's investment of $900,000 to Clear Sky Holding Company." (Id. at 16).

Duscio's arguments are premised on facts and evidence outside of the Complaint, and the Court declines to consider them at this juncture. Jones, 917 F.2d at 1532. Duscio does not advance any legal argument articulating why, in this situation, Plaintiff is not entitled to equitable relief or otherwise possesses an adequate remedy at law to recover the life insurance policy. Plaintiff's Complaint instead alleges that there is no adequate legal remedy, that the life insurance policy was transferred without consideration, and that Duscio should not be permitted to retain the benefit conferred upon him. The Court finds Plaintiff pled facts sufficient to show he is entitled to equitable relief.

B.    Motion for Default Judgment Against Jones, Luck, and Padon

In Plaintiff's Motion for Default Judgment, Plaintiff contends that "[d]espite due and proper service, [Jones, Luck, and Padon] have failed to plead, defend, or otherwise respond to the Summons and Complaint served on them within the time prescribed by the Federal Rules of Civil Procedure, i.e., Neal Jones, by January 31, 2017; Terry Luck, by February 1, 2017; and Walter Padon, by January 30, 2017." ([39.3] at 2). Plaintiff further alleges that, "[b]y failing to plead or otherwise respond, the [d]efaulting Defendants have admitted each paragraph of

Plaintiff's Complaint, specifically including those paragraphs and statements concerning the fraudulent transfers directed to the [d]efaulting Defendants in furtherance of the Ponzi scheme while CN[Capital] was insolvent, and also including their liability for unjust enrichment and money had and received. Additionally, the Defaulting Defendants admit those paragraphs setting forth the amounts claimed by Plaintiff, including interest." ([39.3] at 4) (citations omitted).

The Complaint alleges, with respect to Jones, that Jones purchased one promissory note on or about April 20, 2012, for $50,000, on which CN Capital paid him monthly interest for three years. ([1] ¶50). The Complaint further alleges that from 2012 to 2015, Torchia caused CN Capital to pay Jones $14,250 in interest on the note. (Id.¶ 51). The Complaint concludes that, "[i]n total, Jones invested $50,000 and received back $64,250," which is $14,240 more than he invested." (Id. ¶ 53). The Complaint alleges, with respect to Luck, that Luck purchased one promissory note on or about December 6, 2010, for $75,639.32, on which CN Capital paid him monthly interest for three years. (Id. ¶ 63). The Complaint states that from 2011 to 2014, Torchia caused CN Capital to pay Luck $23,417.02 in interest on the note. (Id.¶ 64). The Complaint concludes that Luck invested $75,639.32 and received back $99,110.34, which is $23,471.02 more than he invested. Finally, the Complaint alleges, with respect to Padon, that Padon

purchased one promissory note on or about May 14, 2012, for $70,000, on which CN Capital paid him monthly interest for three years. (Id. ¶ 67). The Complaint states that Torchia caused CN Capital to Pay Padon $19,950 in interest on the note. (Id. ¶ 68). The Complaint concludes that, "[i]n total, Padon invested $70,000 and received back $89,950, which is $19,950 more than he invested." (Id. ¶ 70).

On a Motion for Default Judgment, if "the plaintiff has alleged sufficient facts to state a plausible claim for relief," a motion for default judgment is warranted. Surtain v. Hamlin Terrace Found., 789 F.3d 1239, 1246 (11th Cir. 2015). "Conceptually, then, a motion for default judgment is like a reverse motion to dismiss for failure to state a claim." Id. at 1245. For the reasons stated above, in Section III.A., and because Defendants Jones, Luck, and Padon were properly served and have failed to answer or otherwise respond, the Court grants Plaintiff's Motion for Default Judgment with respect to Plaintiff's claims for fraudulent transfers and unjust enrichment. The Court denies Plaintiff's Motion for Default Judgment with respect to Plaintiff's claim for money had and received.

Finally, Plaintiff's Complaint and supporting documents adequately support the claimed damages, that the damages are capable of mathematical calculation, and that the damages are reasonable. Adolph Coors Co. v. Movement Against Racism and the Klan, 777 F.2d 1538, 1543 (11th Cir. 1985) (finding that a court

21

may grant default judgment and award damages without a hearing if "the amount claimed is a liquidated sum or one capable of mathematical calculation").

## IV.    CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant Antonio Duscio's Motion to Dismiss [34] Plaintiff Al B. Hill's ("Plaintiff"), as Receiver for Credit Nation Capital, LLC ("CN Capital"), Credit Nation Acceptance, LLC, Credit Nation Auto Sales, LLC, American Motor Credit, LLC, and Spaghetti Junction, LLC (collectively, the "Receivership Companies"), Complaint is **GRANTED IN PART** and **DENIED IN PART**.  Duscio's Motion to Dismiss is **GRANTED** with respect to Plaintiff's claim for money had and received.  Duscio's Motion to Dismiss is **DENIED** with respect to the remaining claims in Plaintiff's Complaint.

**IT IS FURTHER ORDERED** that Plaintiff Al B. Hill's Motion for Final Default Judgment Against Defendants Neal Jones, Terry Luck, and Walter Padon [39.3] is **GRANTED IN PART** and **DENIED IN PART**.  Plaintiff's Motion for Default Judgment is **GRANTED** with respect to his claims for fraudulent transfers and unjust enrichment.  It is **DENIED** with respect to his claims for money had and received.  The Clerk is **DIRECTED** to enter judgment in favor of Plaintiff Al B. Hill as follows: (1) against Neal Jones in the amount of $14,250 plus interest in

the amount of $3,160.07; (2) against Walter Padon in the amount of $19,950  plus

interest in the amount of $4,313.85; and against Terry Luck for $23,471.02 plus

interest in the amount of $7,368.73.


**SO ORDERED** this 20th day of February, 2018.


WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE